## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**JONATHAN STEIN d/b/a**                          **CIVIL ACTION**
**LAW OFFICES OF JONATHAN STEIN,**
**AN INDIVIDUAL**

**VERSUS**                                       **NO. 20-2638**

**LEE MICHAEL RUDIN, ESQ.,**                     **SECTION D (4)**
**ET AL.**

### ORDER AND REASONS

Before the Court is Defendant Lee Rudin's Motion to Dismiss.[1]  The Motion is

opposed,[2] and Defendant has filed a Reply.[3]  Before the Court is also Defendant's

Motion for Sanctions.[4]  The Motion is similarly opposed.[5]  After careful review of the

parties' memoranda, the record, and the applicable law, the Court grants the Motion

to Dismiss and denies the Motion for Sanctions.

### I.    FACTUAL BACKGROUND

This legal malpractice suit arises from related copyright and malpractice

litigation in the Southern District of Iowa.[6]  Glenn Golden and G2 Database

---

[1] R. Doc. 9.
[2] R. Doc. 32.
[3] R. Doc. 35.
[4] R. Doc. 36.
[5] R. Doc. 38.
[6] The Court notes that the parties have filed a variety of exhibits to their briefs, consideration of many of which would require converting this Rule 12(b)(6) motion into one under Rule 56.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  The Court declines to do so here.  Accordingly, in considering the Motion to Dismiss, the Court considers only the Complaint and its attachments, as well as other documents which the Court may properly take judicial notice of.  *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.").  For the reasons stated above, the Court finds Defendant's Objections to Plaintiff's Declaration and Exhibits A-M of the Declaration, *see* R. Doc. 35 at 1-2, to be moot.  In considering Defendant's Motion

Marketing employed Jonathan Stein, a California attorney, and Michael Rudin, a Louisiana attorney then with the firm Aaron & Gianna ("A&G"), to bring suit for the alleged theft of a software program owned by Golden (the "Copyright Litigation").[7] Stein was lead counsel.[8]  The matter was initially brought in this district, but was later transferred to the Southern District of Iowa.[9]  Golden settled the lawsuit at a mediation on September 18, 2018.[10]

Following the settlement, Golden filed a separate suit against Stein in which he alleged that Stein had engaged in professional negligence and breached his fiduciary duty to his clients in the Copyright Litigation (the "Malpractice Litigation").[11]  Stein countersued, filing a third-party Complaint against Rudin's firm, A&G.[12]  Stein alleged that although Rudin and Stein were both hired as counsel in the Copyright Litigation, "at one point in the *Underlying Action* [the Copyright Litigation], Corporate Counsel and Attorney stopped acting 'hand-in-glove.'"[13]  Stein further alleged that "[a]s Corporate Counsel had already ceased work on the

---

for Sanctions, the Court also considers the affidavit of Jonathan Stein that Rudin argues acts as a basis for sanctions.

[7] R. Doc. 1 at 3 ¶ 8.  Stein sometimes refers to the Copyright Litigation as the "Underlying Action" in his filings.  Because of the number of suits now at play, the Court uses a more specific term.

[8] *Id.*

[9] *Id.*; *see also* Eastern District of Louisiana, Docket No. 15-5769, R. Doc. 138; Southern District of Iowa Docket No. 16-529.

[10] R. Doc. 1 at 3 ¶ 8.

[11] *See* R. Doc. 1 at 4 ¶ 15; R. Doc. 9-5 (S.D. Iowa Docket No. 18-331, R. Doc. 117).  The $2,000,000 settlement in the Original Litigation was also delayed by a lien Stein filed in the Copyright Litigation seeking unpaid fees.  *See, e.g.*, R. Doc. 9-5 at 10 ¶ 64. Golden's more detailed allegations about how Stein's representation in the Copyright Litigation was legally inadequate are described in his Amended Complaint.  *See generally id.*

[12] *See* R. Doc. 9-6 (S.D. Iowa Docket No. 18-333, R. Doc. 5).  Stein also sued another law firm he worked with, White Zuckerman, Warsavsky, Luna & Hunt, LLP.  *See id.*  Those allegations are not relevant to the instant action.

[13] *Id.* at 10 ¶ 36.

*Underlying Action*, it had a underlined personal interest in advising Plaintiffs to settle for an insufficient amount, so that it might collect its overdue receivable."[14]  Stein argued that to the extent he is found liable for malpractice in the Malpractice Litigation, which remains pending in the Southern District of Iowa, "then those damages were primarily and ultimately caused by the acts in omissions of the Third Party Defendants [including A&G]."[15]  Stein alleged claims against A&G for indemnity, contribution, declaratory relief, intentional and negligent interference with contractual advance, and breach of fiduciary duty.[16]

A&G moved to dismiss Stein's claims against it in the Malpractice Litigation.[17] The Chief Judge of the Southern District of Iowa, John Jarvey, granted A&G's Motion to Dismiss.[18]  Judge Jarvey began with an extensive discussion of the procedural history of the case and with an analysis of the parties' claims.[19]  As to choice of law, Judge Jarvey found that California law applied to the suit as "'no true conflict' has been identified between or among Iowa law, Louisiana law, and California law on the issues to which Aaron & Gianna assert California law applies."[20]

Turning to Stein's claims, Judge Jarvey found that "although Aaron & Gianna and Stein *were* concurrent co-counsel, Aaron & Gianna is now *successor counsel* to Stein in the Underlying Action, because Aaron & Gianna continues to represent

---

[14] *Id.* at 10 ¶ 37 (emphasis in original).
[15] *Id.* at 11 ¶ 41.
[16] *See generally id.*
[17] R. Doc. 9-3 (S.D. Iowa Docket No. 18-331, R. Doc. 18).
[18] R. Doc. 9-7 (S.D. Iowa Docket No. 18-331, R. Doc. 69).
[19] *Id.* at 1-20.
[20] *Id.* at 20 (citations omitted).

Golden after Stein's termination."[21]  Judge Jarvey then found that Stein's claims for contribution and indemnity were barred under California law on grounds of public policy.  The court noted that "even if Stein and Aaron & Gianna are properly considered concurrent or co-counsel . . . the court concludes that the public policy considerations identified by the California courts bar Stein's indemnity and contribution claims against Aaron & Gianna."[22]  Judge Jarvey further dismissed Stein's remaining claims against Aaron & Gianna on other grounds.[23]

The Southern District of Iowa litigation has yet to end, and therefore no final judgment was entered.  The malpractice suit had been set for trial on October 19, 2020.[24]  Immediately before trial, the Gabreilino-Tongva Tribe moved to intervene in the suit and stay the trial as it had a $30 million judgment against Stein.[25]  The Court stayed the trial.[26]  The Court later granted the Tribe's Motion to Intervene.[27]  To date, no trial has been set.

On September 9, 2020, less than four months after the Southern District of Iowa court dismissed his claims against A&G, Stein filed suit in this Court against Lee Rudin, the A&G attorney who worked on the Copyright Litigation.[28]  Rudin seeks essentially the same relief in this action as he sought in his third-party complaint in the Malpractice Litigation:  contribution, indemnity, and declaratory relief against

---

[21] *Id.* at 23.
[22] *Id.*
[23] *Id.* at 26-33.
[24] Southern District of Iowa, Docket No. 18-331, R. Doc. 39.
[25] Southern District of Iowa, Docket No. 18-331, R. Doc. 204.
[26] Southern District of Iowa, Docket No. 18-331, R. Doc. 238.
[27] Southern District of Iowa, Docket No. 18-331, R. Doc. 354.
[28] *See* R. Doc. 1.

Rudin resulting from the allegations of malpractice made by Golden against Stein. Stein's factual allegations directly mirror the allegations made against A&G.  For example, Stein alleges that "at one point in the *Underlying Action*, Rudin and Stein stopped acting 'hand-in-glove'"[29]  and that "[a]s Rudin had already ceased work on the *Underlying Action*, he had a <u>personal</u> interest in advising Plaintiffs to settle for an insufficient amount, so that it might collect its overdue receivable."[30]

Stein previously moved to stay this proceeding.[31]  In support of that Motion, Stein filed a declaration[32]  in which he made various representations, including that "Mr. Rudin clearly hates my 'guts' and was willing to call <u>his own work</u> malpractice and <u>his own litigation choices</u> malfeasance."[33]  Rudin disputes the tone and, in some instances, the substance of the allegations in Stein's declaration.[34]  The Court ultimately stayed discovery in the litigation, but denied the Motion to Stay the entire litigation.[35]

Rudin moves to dismiss the instant action.[36]  Rudin first argues that this suit is barred by the rule against claim splitting.  Rudin contends that Stein's current claims against him and Stein's previous claims against A&G (which were dismissed) are indistinguishable.  Rudin presses that because Stein's suit against him arises from the same nucleus of operative facts as his earlier suit against A&G, Rudin's

---

[29] *Id.* at 7 ¶ 31.

[30] *Id.* at 8 ¶ 33 (emphasis in original).

[31] R. Doc. 11.  This declaration is considered only as to the Motion for Sanctions, not the Motion to Dismiss.

[32] R. Doc. 11-3.

[33] *Id.* at 2 ¶ 5 (emphasis in original).

[34] *See* R. Doc. 36-1.

[35] R. Doc. 26.

[36] R. Doc. 9.

employer at the time, the rule against claims splitting requires dismissal of this action.

Rudin next argues that Stein has no cause of action for contribution, as his claim arises under Louisiana law, which does not allow for such a contribution claim. Similarly, Rudin argues that Stein fails to state a claim for indemnity, as under Louisiana law the party seeking indemnification must be without fault. Rudin next presses that Louisiana law does not recognize a malpractice claim by counsel against co-counsel. Further, Defendant argues that Stein's suit is untimely as it was filed outside of Louisiana's two-year statute of limitations for malpractice claims. Finally, Rudin maintains that Stein has failed to join the real party in interest as he has advised that he assigned his rights in this suit to "one or more third parties," which Rudin argues violates Federal Rule of Civil Procedure 17(a), as well as Louisiana legal malpractice law.[37]

Stein has filed an Opposition to Rudin's Motion to Dismiss.[38] Stein argues that the rule against claim splitting does not apply to this suit, as under the "black and white" requirements of Fifth Circuit law, the requirements of claim splitting are not met here. Specifically, Stein argues that claim splitting requires that the same defendant be sued in the same court. Stein contends that because he sued A&G in Iowa, and now has sued Rudin in Louisiana, the rule against claim splitting cannot apply. Stein further argues that even if the rule against claim splitting would generally bar this action, an exception applies here, as the facts and circumstances

---

[37] R. Doc. 9-2 at 28 (quoting R. Doc. 1 at 8 ¶ 35).
[38] R. Doc. 32.

have changed since his initial suit against A&G was dismissed.  Specifically, Stein
contends that his first suit was dismissed only because A&G had an ongoing role as
attorney of record, and that is no longer the case.

As to the merits of his claims, Stein argues that Iowa law, not Louisiana law,
applies. Stein therefore argues that Rudin's arguments that Stein has no contribution
or indemnity right under Louisiana law are misplaced, as he may maintain such
claims under Iowa law.  Stein further argues that should the Court conclude that
California law applies (as the Iowa court did), then changed facts and circumstances,
including Rudin leaving A&G and A&G withdrawing as counsel of record in the
Copyright Litigation, mandate a different result from Judge Jarvey's decision.

To the extent the Court applies Louisiana law to Stein's substantive claim,
Stein argues that he has a right to contribution as Rudin and Stein were not "solidary
obligors."  Stein next contends he has not violated the statute of limitations for his
contribution claim as under Iowa law, the claim does not accrue until a party has
sustained a loss (*i.e.*, Stein is held liable for legal malpractice or settles the
malpractice claims against him).  Stein further argues that he states no cause of
action for legal malpractice, and therefore Rudin's arguments regarding this claim
are misplaced.  Finally, Stein argues that he need not join Linda Stein, his wife to
whom he assigned "99% of his right, title and interest in Golden v. Stein,"  in this
action as he has only partially assigned his claim and because she is not an
indispensable party.[39]

---

[39] R. Doc. 32.

In his Reply,[40] Rudin argues that the rule against claim splitting is not limited to suits in the same court and that A&G and Rudin are essentially the same person for the purposes of Stein's Motion.  Rudin also contends that no exception to the rule against claim splitting applies as no "new facts" change the legal analysis at issue. Rudin further argues that Louisiana choice of law rules mandate the application of Louisiana substantive law under La. Civ. Code arts. 3515 and 3542.  Rudin contends that the choice of Louisiana law is dispositive of this suit for the reasons described in his opening Motion.

Rudin has relatedly filed a Motion for Sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.  Rudin argues that the instant suit violates Federal Rule of Civil Procedure 11(b) as it was used for an improper purpose and is factually and legally implausible for the same reasons described in Rudin's Motion to Dismiss.  Rudin also argues that Stein violated the Rules of Professional Conduct and 28 U.S.C. § 1927 by filing a declaration before this Court which Rudin argues "flies in the face of attorney professionalism" and constituted "abusive ad hominem attacks [which] are unprofessional, intemperate, and sanctionable."[41]  In his Opposition to the Motion for Sanctions,[42] Stein largely argues that his case is well grounded in law and fact for the reasons articulated in his Opposition to the Motion to Dismiss, and therefore sanctions are not warranted.  To the extent the Court does find sanctions warranted, Stein emphasizes that the Court must apply the least severe sanction.

---

[40] R. Doc. 35.
[41] R. Doc. 36-1 at 28-29.
[42] R. Doc. 38.

Stein also argues that his declaration accurately described underlying facts, and that Rudin's response was "purple language" which was inappropriate itself.

## II.    MOTION TO DISMISS

### A.    Legal Standard

To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief.[43]  A claim is plausible if it is pleaded with factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.[44] But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[45]  In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[46]  However, the allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.[47]  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[48]

### B.    Analysis

The threshold question before the Court is whether the instant action constitutes impermissible claim splitting.  "Claim splitting occurs when a single 'cause of action' is split by advancing one part in an initial suit and another part in a

---

[43] *Romero v. City of Grapevine, Tex.*, 888 F. 3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[44] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678).

[45] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F. 3d 1029, 1032 (5th Cir. 2010) (per curiam).

[46] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[47] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).

[48] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).

later suit."[49]  The rule against claim splitting "prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in a single action."[50]  "Under this approach, the critical issue is whether the two actions were based on the same nucleus of operative facts.  In this inquiry, we look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies."[51]  "A main purpose behind the rule preventing claim splitting is to protect the defendant from being harassed by repetitive actions based on the same claim."[52]  The rule against claim splitting is related to the doctrine of claim preclusion, though it does not require a final judgment.[53]

To determine whether the rule against claim splitting bars this action, the Court must determine whether Stein's action against A&G in the Malpractice Litigation and the instant suit are "based on the same nucleus of operative facts."[54] Here, both suits obviously arise from the same facts, and Stein does not (and cannot) realistically argue otherwise.  Indeed, in many ways, the factual allegations in Stein's Complaint against Rudin in this matter are a carbon copy of the factual allegations he made against Aaron & Gianna in the Iowa litigation.[55]  This matter, exactly like the matter already litigated in Iowa, arises from Stein and Rudin's joint representation of Golden in the Copyright litigation, and allegations that Stein

---

[49] *F.D.I.C. v. Nelson*, 19 F.3d 15 n.5 (5th Cir. 1994).

[50] *Ameritox, Ltd. v. Aegis Sciences Corp.*, No. 08-1168, 2009 WL 305874, at *4 (N.D. Tex. Feb. 9, 2009) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008)).

[51] *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992) (quotation and citations omitted).

[52] *Matter of Super Van Inc.*, 92 F.3d 366 (5th Cir. 1996).

[53] *See Ameritox*, at *5 (collecting authorities).

[54] *Eubanks*, 977 F.2d at 171 (quotation and citations omitted).

[55] *Compare* R. Doc. 9-6 at 8-10 *and* R. Doc. 1 at 6-8.

committed malpractice in that representation.   Further, claims Stein makes—namely, contribution, indemnity, and declaratory relief—were also made in the Malpractice Litigation.   Faced with having his claims against A&G dismissed in the Malpractice Litigation, Stein filed suit in this Court against Rudin based on the exact same facts.   Accordingly, the rule against claim splitting plainly bars this action.

Stein resists this conclusion in three ways.   First, he argues that the rule against claim splitting only bars suits that are filed in the *same court* as another, earlier-filed and related action.   Second, Stein argues that because he sued a different party, *i.e.*, Rudin, in this action, his earlier suit against A&G, Rudin's previous law firm employer, cannot be the basis for dismissal on claim-splitting grounds.   Finally he argues that even if claim splitting would normally apply, an exception is applicable here.   The Court addresses each argument in turn.

Stein's contention that the rule against claim splitting applies only to suits filed in the same court is meritless.   The Fifth Circuit has not held that the suits must be filed in the same court for the rule to apply; rather, the inquiry is whether the claims are "based on the same nucleus of operative fact."[56]   Indeed, courts have applied the rule against claim splitting when the earlier suit was filed in a separate district.[57]   The sole authority Stein relies on to argue this point is an unpublished Fourth Circuit case, which stated that "[w]hen one suit is pending in federal court, a plaintiff has no right to assert another action 'on the same subject in the same court,

---

[56] *Nelson*, 19 F.3d 15 n.5 (citing *Eubanks*, 977 F.2d at 171).

[57] *See, e.g.*, *Ameritox, Ltd. v. Aegis Sciences Corp.*, No. 08-1168, 2009 WL 305874 (N.D. Tex. Feb. 9, 2009). (dismissing complaint filed in the Northern District of Texas because it arose from the same factual nexus as a complaint filed in the Southern District of Florida).

against the same defendant at the same time.'"[58]  Stein misinterprets the meaning of that statement.  That judicial statement was not *limiting* the rule against claim splitting to claims filed in the same court; rather, it was explaining why the rule was clearly appliable on the facts of that case.  Indeed, the case quoted by the Fourth Circuit in stating that a Plaintiff may not maintain a suit "in the same court," also states that "[a]s part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit" without limiting the rule to a related suit in the same court.[59]

Stein's next argument is that the rule against claim splitting cannot apply because he is suing a different party than he did in the Malpractice Litigation.  This argument turns on the idea that Rudin and A&G are legally separate.  Stein fails to acknowledge that, in suing A&G in the first suit, Stein was suing A&G for Rudin's conduct.  This is evident from comparing the two complaints, which accuse A&G and Rudin of *the exact same conduct*.  This is not a factual scenario where one party was not aware of the party responsible for the conduct.  Indeed, it is undisputed that Stein knew of Rudin's identity when he brought his Complaint against A&G in the Malpractice Litigation, as he and Rudin had been co-counsel, and Stein could easily have included Rudin had he so chosen.  Instead, he chose to proceed with the claim against Rudin's employer.

---

[58] *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)).
[59] *Curtis* at 138.

To determine whether Rudin and A&G are sufficiently related such that the rule against claim splitting should apply in to bar suit against Rudin, the Court looks to the related doctrine of *res judicata*.  Under the doctrine of res judicata, a "final judgment on the merits bars further claims by parties or their privies based on the same cause of action."[60]  "Privity may exist if a party to the first suit's interests are so closely aligned with those of a non-party as to be his 'virtual representative.'"[61] There is a wealth of caselaw finding that lawyers are in privity with their law firms.[62] Accordingly, the Court finds that Rudin and A&G are in privity with each other, and rejects Stein's argument that the rule against claim splitting does not apply because he is suing Rudin and not A&G, Rudin's former law firm.

Stein's final argument is that even if the rule against claim splitting would generally apply, an exception is at play.  Specifically, he argues that an exception listed in Section 26(1) of the Restatement (Second) of Judgments to the Rule Against Claim Splitting allows him to proceed in this action.  The relevant section provides:

> When any of the following circumstances exists, the general rule of § 24 [the rule against claim splitting] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a section action by the plaintiff against the defendant . . . (c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or

---

[60] *Olagues v. Kousharian*, 557 F. Supp. 2d 731, 736 (E.D. La. 2008) (quoting *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007)).

[61] *Id.* (quoting *Clifton v. Warnaco, Inc.*, 53 F.3d 1280 (5th Cir. 1995)).

[62] *See, e.g.*, *Beras v. Carlvin*, 313 F. App'x 353, 354-55 (2d Cir. 2008); *Modern Pharmacy, LLC v. JM Smith Corp.*, No. 19-25246, 2020 WL 1062976, at *2 (S.D. Fla. Mar. 5, 2020); *Newsome v. Gallacher*, No. 11-140, 2014 WL 2533405, at *8 n.8 (N.D. Okla. June 5, 2015).

> forms of relief in a single action, and the plaintiff desires in
> the second action to rely on that theory or to seek that
> remedy or form of relief.

The Fifth Circuit has relied on this subsection of Rule 26 to the Restatement (Second) of Judgments, and has therefore implicitly adopted it.[63]  For the reasons below, the Court finds that the exception is not applicable here.  In describing the exception Stein relies on, the First Circuit has stated:  "[t]his exception permits a second suit on [a] damages claim only if a jurisdictional obstacle has precluded raising that issue in the first action."[64]  Stein's initial suit was not dismissed due to "a jurisdictional obstacle," but because of a merits-based public policy bar to suits under California law.  There was no restriction on Judge Jarvey's authority to consider Stein's claims; instead, the judge determined that the claims were legally insufficient under the law.  Accordingly, the exception in Rule 26(1)(c) does not apply here.

Even if Section 26(1)(c) of the Restatement (Second) of Judgments allowed for a second suit where merits-based factual circumstances have changed—and it does not—Stein fails to explain how the change in circumstances justifies a renewed suit against Rudin.  The only change in circumstances that Stein points to is that A&G no longer has an ongoing role as attorney of record or an ongoing attorney-client relationship with Golden.[65]  Judge Jarvey's opinion in the Malpractice Litigation was not premised on the fact that Rudin was remaining as counsel of record at the time his opinion was issued, but rather was premised on the fact that Rudin was a

---

[63] *See Jackson v. U.S. Postal Service*, 799 F.2d 1018, 1021 (5th Cir. 1986).

[64] *Pasterczyk v. Fair*, 819 F.2d 12, 14 (1st Cir. 1987).

[65] R. Doc. 32 at 25.  The Court notes that in making this argument, Stein tacitly concedes that Rudin and A&G are in privity.

successor attorney to Stein in the litigation.[66]  That fact remains true even thought the Copyright Litigation has ended.  Accordingly, the Court finds that there is no change in circumstances as argued by Stein which would operate to prevent application of the rule against claim splitting.

In short, the rule against claim splitting plainly bars the instant action.  Stein previously filed a claim based on the same underlying facts, seeking the same relief, against a party in privity with the instant defendant.  The rule against claim splitting bars just such an action.  Additionally, the Court finds that allowing this case to proceed subjects the Defendant to defending a repetitive action based on the same claim dismissed by Judge Jarvey, thereby defeating the main purpose behind the rule preventing claim splitting.  Accordingly, Stein's Complaint against Rudin must be dismissed.  Because the Court finds that this suit is barred by the rule against claim splitting, the Court does not reach the parties' remaining arguments regarding Stein's claims.

## III.   MOTION FOR SANCTIONS

### A.    Federal Rule of Civil Procedure 11

#### 1.    *Legal Standard*

Rule 11 of the Federal Rules of Civil Procedure provides that:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge,

---

[66] *See* R. Doc. 9-7 at 23-24 (citing *Musser v. Provencher*, 48 P.3d 408 (Cal. 2002).  To the extent Stein's argument is that Iowa law, rather than California law, applies, that is not a change in circumstances, but an argument that Judge Jarvey's choice of law analysis was incorrect.  Stein may not seek to revisit Judge Jarvey's choice-of-law analysis in a separate court.

information, and belief, formed after an inquiry reasonable
under the circumstances:

> (1) it is not being presented for any improper
> purpose, such as to harass, cause unnecessary delay,
> or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions
> are warranted by existing law or by a nonfrivolous
> argument for extending, modifying, or reversing
> existing law or for establishing new law;

> (3) the factual contentions have evidentiary support
> or, if specifically so identified, will likely have
> evidentiary support after a reasonable opportunity
> for further investigation or discovery.[67]

In other words, at attorney "violates Rule 11 if he fails to conduct a reasonable
inquiry into the law and facts underlying the motion, or if makes a motion to delay,
harass, or increase the costs of litigation."[68] "In deciding whether a pleading has been
filed for *any* improper purpose under subpart (b)(1), 'the standard under which the
attorney is measured is an objective, not subjective, standard of reasonableness under
the circumstances.'"[69] "To determine whether a party pursued an illegitimate
purpose to increase costs or harass a party, the court must identify 'unusual
circumstances' that support an inference of such purposes by looking to 'objectively
ascertainable circumstances rather than subjective intent.'"[70]

---

[67] Fed. R. Civ. P. 11(b).
[68] *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999).
[69] *Marceaux v. Lafayette City Parish Consol. Gov't.*, 14 F. Supp. 3d 760, 766 (W.D. La. Apr. 11, 2014)
(quoting *Jenkins v. Methodist Hospital of Dallas, Inc.*, 478 F.3d 255, 264 (5th Cir. 2007) (en banc))
(emphasis in original).
[70] *Id.* at 766 (quoting *F.D.I.C. v. Maxxim*, 523 F.3d 566, 584, 586 (5th Cir. 2008)).

As to Rule 11(b)(2), whether a pleading is legally sufficient, the Court may consider "the time available to the attorney to prepare the document; the plausibility of the legal view contained in the document; the *pro se* status of a litigant; and the complexity of the legal and factual issues raised."[71]  Relatedly, as to Rule 11(b)(3), to determine whether a party has made a reasonable inquiry into the facts and circumstances of the case, a court considers "how much time for investigation was available to the signer; how much did the attorney have to rely on his client for the factual support for the document; was pre-filing investigation reasonable; did the signing attorney accept the case from another member of the bar or forwarding attorney; the complexity of the factual and legal issues in question; and the need for discovery to develop factual circumstances underlying the claim."[72]

Should a party violate Rule 11(b), Rule 11(c) provides a mechanism by which a court may sanction a party for such a violation.  That rule provides that a "sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."[73]  The Fifth Circuit has held that the Court "should utilize the least severe sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose."[74]

### 2.   *Analysis*

Rudin argues that the instant lawsuit lacks a legal or factual basis (as demonstrated by Judge Jarvey's order in the Malpractice Litigation), and therefore

---

[71] *Thomas*, 812 F.2d at 988.

[72] *Id.*

[73] Fed. R. Civ. P. 11(c)(4).

[74] *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d at 255, 265 (5th Cir. 2007).

was filed only for the improper purpose of harassing him.  Accordingly, analysis under Rule 11(b)(1) (which asks if the lawsuit was instituted for an improper purpose) and Rule 11(b)(2) and (b)(3) (which asks if the lawsuit has a proper legal and factual basis) are interrelated here.  As demonstrated above, the Court has found that Stein's suit violates the rule against claim splitting, and therefore lacks merit and must be dismissed.  However, the Court's decision that Stein's suit is legally insufficient, and that Stein's arguments to the contrary are unpersuasive, does not itself merit sanctions.[75]  The Court is mindful that Rule 11 sanctions "are normally reserved for the rare and exceptional case where the action is *clearly* frivolous, legally unreasonable, or without legal foundation or brought for an improper purpose."[76] Here, while Stein's arguments that Judge Jarvey's order is distinguishable from the instant action and that the rule against claim splitting is inapplicable were ultimately unsuccessful, they were not so frivolous as to merit an award of sanctions. Further, to the extent a sanction is warranted under Rule 11(b), the Court notes that dismissal of this action under the rule against claim splitting itself acts as a sanction, and the Court must apply "the least severe sanction that furthers the purposes of Rule 11."[77]  Accordingly, the Court declines to impose a monetary sanction in this action under Rule 11.

---

[75] *See, e.g., Lemon v. Harlem Globetrotters Intern., Inc.*, 437 F. Supp. 2d 1089, 1111-12 (D. Ariz. 2006) ("Rule 11, however, 'is not intended to permit sanctions just because the court later decides that the lawyer is wrong.'" (quoting *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987)).
[76] *Laughlin v. Perot*, 1997 WL 135676, at *8 (N.D. Tex. Mar. 12, 1997) (citing *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)) (emphasis in original).
[77] *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d at 255, 265 (5th Cir. 2007).

**B.     28 U.S.C. § 1927**

1.     *Legal Standard*

Under 28 U.S.C. § 1927, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[78]  "In order to impose sanctions under [Section] 1927, the court must find 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'"[79]

The Fifth Circuit generally requires a detailed explanation of why the proceedings were both "unreasonable" and "vexatious."[80]  Such findings "must (1) identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits, (2) link the sanctionable conduct to the size of the sanctions, and (3) differentiate between sanctions awarded under different statutes."[81]  "Punishment under this statute is sparingly applied, and 'except when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in, an award under 28 U.S.C. § 1927 may not shift the entire financial burden of an action's defense.'"[82]

---

[78] 28 U.S.C. § 1927.

[79] *Marceaux*, 14 F. Supp. 3d at 767 (citing *Gonzales v. Fresenius Medical Care of North America*, 689 F.3d 470, 479 (5th Cir. 2012)).

[80] *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994).

[81] *Procter & Gamble Co. v. Amway Corp*, 280 F.3d 519, 526 (5th Cir. 2002).

[82] *Calhoun*, 34 F.3d at 1297 (quoting *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991)).

2.    *Analysis*

Rudin's Motion for Sanctions under 18 U.S.C. § 1927 is partially based on Stein's Declaration which he filed in support of his Motion to Stay Proceedings, which Rudin contends violates the Rules of Professional Conduct.[83]  In Stein's Declaration, he essentially recounts his version of facts that led this dispute.   In the Fifth Paragraph, Stein stated that

> In two very lengthy writings, and a long deposition punctuated by frequent narratives and vulgar language, Rudin severely criticized the work for three years that he and I did in the *Underlying Litigation*.  I have reviewed Rudin's deposition videotape and transcript.  I attached the two writings to the Complaint *[Doc. 1]*.  Rudin said that most all of the court pleadings that he had signed constituted malpractice; and that most all of the litigation chores in which he worked hand-in-glove with me were of no good use, except to make money at Golden's expense (in other words, malfeasance).  While Rudin himself did up to half the work, he blamed me for 100% of its results; and ignored the fact that the main result was a $2.0 million settlement in favor of Golden.  What is more, Mr. Rudin's two lengthy writings, and his narratives at depositions, spared nothing in the <u>intensity</u> of his views.  Mr. Rudin clearly hates my "guts" and was willing to call <u>his own work</u> malpractice and <u>his own litigation chores</u> malfeasance.[84]

Rudin contests some of the facts alleged by Stein in his Declaration and contends that Stein's "abusive ad hominem attacks are unprofessional, intemperate and sanctionable."[85]  The wording of Stein's declaration is at times argumentative and aggressive, and demonstrates the reproach the parties in this matter feel towards each other.   That said, the Court finds that Stein's statement, limited to this

---

[83] R. Doc. 11-3.
[84] *Id.* at 2 ¶ 5.
[85] R. Doc. 36-1 at 29.

declaration, though argumentative and aggressive, does not rise to the level of "unreasonable" and "vexatious" as required for an award of sanctions under Section 1927 appropriate here.

Rudin also seeks sanctions under 28 U.S.C. § 1927 for the filing of this action in the first instance, as he argues it unreasonably and vexatiously multiplied proceedings in light of Judge Jarvey's earlier order dismissing Stein's claims against A&G. Importantly, though, various courts have held that "[a]n attorney cannot be sanctioned under [Section] 1927 for simply commencing a frivolous lawsuit."[86] Even were this not the case, the Fifth Circuit has held that "[a] party that predicates its legal claim on a controversial and unsettled legal theory should not face sanctions under [Section 1927] . . . when the court ultimately rejects the claim."[87] As described above, although the Court has rejected Stein's arguments that this suit does not violate the rule against claim splitting, those arguments were not so "unreasonable" or "vexatious" as to require sanctions. Accordingly, the Court declines to issue sanctions under Section 1927 for the commencement of the instant lawsuit.

---

[86] *Gurman v. Metro Housing and Redevelopment Authority*, 884 F. Supp. 2d 895 (D. Minn. 2012), ; *see also Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir. 2008) ("[W]e join an unbroken band of cases across the courts of appeals holding that a lawyer cannot violate section 1927 in the course of commencing an action.").

[87] *Procter & Gamble Co.*, 280 F.3d at 531-32.

IV.     **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED**.   **IT IS FURTHER ORDERED** that the Defendant's Motion for Sanctions is **DENIED**.

New Orleans, Louisiana, July 23, 2021.

_____

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**